**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COREY HEARD, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No.  1:19-CV-4158 |
| v. | ) ) | Honorable Rebecca R. Pallmeyer |
| BECTON, DICKINSON & COMPANY, | ) ) | Magistrate Judge Hon. Gabriel A. Fuentes |
| Defendant. | ) ) ) | |

**BECTON, DICKINSON AND COMPANY'S**
**<u>MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>**

Gary M. Miller
Matthew C. Wolfe
Benjamin E. Sedrish
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL  60606
Tel:  (312) 704-7700
Fax:  (312) 558-1195
Firm No. 58950
gmiller@shb.com
mwolfe@shb.com
bsedrish@shb.com

***Attorneys for Defendant Becton, Dickinson
and Company***

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 2

    A.    The Biometric Information Privacy Act ................................................. 2

    B.    Class Action Complaint ................................................................... 3

LEGAL STANDARD ............................................................................................ 3

ARGUMENT ...................................................................................................... 4

I.     PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE BIPA'S HEALTH CARE EXEMPTION APPLIES. ...................................................................... 4

II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER BIPA. ............................... 6

    A.    Plaintiff's Claim Under Section 15(b) Should Be Dismissed................... 6

        1.    BD Is Not Plaintiff's Employer, So It Does Not Have To (And Could Not) Comply With Section 15(b)'s Notice And Consent Provisions................................................................................ 6

        2.    Section 15(b)'s Notice And Consent Requirements Govern Only Entities That Actively "Collect" Or "Capture" An Individual's Biometric Data. ................................................................... 7

        3.    Plaintiff Does Not Sufficiently Allege That BD Actively "Collected" Or "Captured" His Biometric Data. ...................... 10

    B.    Plaintiff's Claims Under Sections 15(a) And 15(d) Should Be Dismissed. ......... 10

        1.    BIPA Applies Only To Those Who Exercise Exclusive Dominion And Control Over Data................................................ 10

        2.    Plaintiff Fails To Sufficiently Allege That BD Has Possession Of His Data. ...................................................................... 11

        3.    Plaintiff Alleges No Facts To Support A Section 15(d) "Disclosure" Claim. ........................................................ 11

III.   PLAINTIFF DOES NOT PLEAD NEGLIGENCE, RECKLESSNESS, OR INTENT, AND THEREFORE FAILS TO STATE A CLAIM........................... 12

**Page**

CONCLUSION.................................................................................................................. 13

ii

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................3

*Brooks v. Ross,*
    578 F.3d 574 (7th Cir. 2009) .....................................................4, 10, 12

*Dana Tank Container, Inc. v. Human Rights Comm'n,*
    687 N.E.2d 102 (Ill. App. Ct. 1997) ...................................................7

*Griffin v. Oceanic Contractors, Inc.,*
    458 U.S. 564 (1982)..............................................................................9

*Honeywell Intern., Inc. v. Dept. of Revenue of State of Ill.,*
    851 N.E.2d 79 (Ill. App. Ct. 2006) ...................................................11

*In re D.W.,*
    827 N.E.2d 466 (Ill. 2005)....................................................................8

*In re Hernandez,*
    918 F.3d 563 (7th Cir. 2019) ...............................................................4

*In re Marriage of Goesel,*
    102 N.E.3d 230 (Ill. 2017) ...................................................................7

*Kerlin v. Chic. Bd. of Elections,*
    No. 16-cv-7424, 2017 WL 5295680 (N.D. Ill. Nov. 13, 2017) ..........3, 4

*Lindsey v. Macias,*
    907 F.3d 517 (7th Cir. 2018) .............................................................11

*People v. Hanna,*
    800 N.E.2d 1201 (Ill. 2003)..............................................................7, 9

*People v. Trainor,*
    752 N.E.2d 1055 (Ill. 2011) ...............................................................12

*Pooh-Bah Enter., Inc. v. Cnty. of Cook,*
    905 N.E.2d 781 (Ill. 2009)....................................................................8

*Rivera v. Google Inc.,*
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ...............................................12

*Rosenbach v. Six Flags Entm't Corp.,*
    2019 IL 123186..................................................................................7, 8

Page

*Segal v. Geisha NYC, LLC,*
    517 F.3d 501 (7th Cir. 2008) ................................................................4

*Sylvester v. Indus. Comm'n,*
    756 N.E.2d 822 (Ill. 2001) ...................................................................4

**Statutes**

740 ILCS 14/5 .............................................................................................9

740 ILCS 14/5(a) .......................................................................................2

740 ILCS 14/10 ....................................................................................1, 3, 4

740 ILCS 14/15 .........................................................................................6

740 ILCS 14/15(a) .....................................................................................2

740 ILCS 14/15(b) ..................................................................................6, 7

740 ILCS 14/15(d) .....................................................................................2

740 ILCS 14/15(e) .....................................................................................2

740 ILCS 14/20 ........................................................................................12

740 ILCS 14/25 .........................................................................................5

**Other Authorities**

42 C.F.R. § 3.20 ........................................................................................5

45 C.F.R. § 164.501 ..................................................................................5

*Black's Law Dictionary* (10th ed. 2014) ........................................8, 10, 11

*Merriam-Webster* (2018) ...........................................................................8

S.B. 2400, 95th Gen. Assemb., Reg. Sess. (Ill. 2008) (Amendment No. 4) ...................................5

iv

Defendant Becton, Dickinson and Company moves to dismiss the Class Action

Complaint filed by Plaintiff Corey Heard, individually and on behalf of all others similarly

situated, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Plaintiff Corey Heard claims that Defendant Becton, Dickinson and Company ("BD")

violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*., during

the course of his employment at various hospitals in Illinois. According to Plaintiff, those

hospitals required him to scan his fingerprint[1] to access medication dispensers sold by BD. The

Complaint never suggests why BD, who neither employed Plaintiff nor operated the machines,

should be liable for what was done with them after they were sold. Indeed, the Complaint lacks

any allegations even hinting that BD had input on Plaintiff's employers' policies and procedures

or otherwise controlled the machines. Plaintiff's claims are mostly bare-bones repetitions of

BIPA's statutory language, so cursory that they likely could not sustain a claim against his

employers, much less BD, a third-party vendor of these devices.

The Complaint should be dismissed in its entirety for three separate reasons, each of

which provides independent grounds for dismissal.

*First*, to the extent Plaintiff's finger scans are covered by BIPA—which they are not—

they fall within BIPA's health care exemption. BIPA expressly exempts information collected

for health care treatment, payment, or operations under the federal Health Insurance Portability

and Accountability Act of 1996 ("HIPAA"). 740 ILCS 14/10. Finger scans used to access

---

[1] BD disputes Plaintiff's assertion that BD devices scanned his "fingerprint." BD denies that its devices collect fingerprints, biometric identifiers, or biometric information, as those terms are defined by BIPA. 740 ILCS 14/10. For the purposes of this Motion, Plaintiff's allegations must be taken as pled. The use of the term "biometric" or "biometric data" in this memorandum is not a concession that any of the data actually is covered by BIPA. BD reserves all arguments regarding the nature of the finger scans at issue in this suit.

medstations—which restrict access to medications and prevent fraud and abuse—are precisely the type of information used for health care treatment, payment, or operations that BIPA sought to exclude.

*Second*, Plaintiff fails to state a claim under BIPA against BD. Short on details, the Complaint does not plausibly allege that BD ever used, collected, possessed, or disseminated biometric information.

*Third*, Plaintiff fails to allege the requisite negligence, recklessness, or intent to support his BIPA claims.

## BACKGROUND

### A. The Biometric Information Privacy Act

BIPA was enacted in 2008 in an effort to manage the "promise" of biometric technology for Illinois residents. *See* 740 ILCS 14/5(a) ("The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings."). BIPA sought to encourage the development and use of biometric technology by imposing requirements on private entities that collect and possess biometric information. *See id.* Only possessors and collectors of biometric data are regulated by BIPA.

BIPA imposes different obligations on possessors and collectors of biometric data. Entities that are "in possession" of biometric data must develop publicly available, written retention schedules and destruction deadlines. *Id.* § 15(a). Possessors of biometric data cannot sell or otherwise profit from the data, or disclose, re-disclose, or otherwise disseminate the data except in certain situations. *Id.* § 15(c)–(d). Possessors must also exercise reasonable care in storing and transmitting the data, and when protecting the data from disclosure. *Id.* § 15(e).

BIPA requires something more of collectors, which are entities that actively "collect, capture, purchase, receive through trade, or otherwise obtain a person's . . . biometric

2

information." *Id.* § 15(b). Collectors of data must provide written notice that their biometric data is being collected, for what purpose it is being collected, and how long it will be stored. *Id.* In the employment context, collectors must also obtain prior consent through a written release between the employer and the employee. *Id.* § 10. Possession is BIPA's outer regulatory limit; notice and consent obligations are imposed only on collectors. BIPA's structure avoids placing duplicative or impractical compliance requirements on entities. BIPA also limits potentially sprawling liability that would threaten the technology's future—a future BIPA was designed to protect.

**B.      Class Action Complaint**

Despite working for at least five different Illinois hospitals in the last five years (Compl. ¶ 49), in this suit Plaintiff brings BIPA claims against only BD. He alleges that, as a condition of employment at those five hospitals, he "***was required*** to scan his fingerprint so it could be used as an authentication method to access" medication dispensers sold by BD. *Id.* ¶ 50 (emphasis in original). These medication dispensers allegedly require "fingerprints" to access these medications, which "improves precision and accuracy of user access." *Id.* ¶ 42. The remainder of the Complaint amounts to little more than a recitation of BIPA's statutory language. Plaintiff claims that BD violated Sections 15(a), (b), and (d), and he seeks "statutory damages of $5,000 for each intentional and/or reckless violation of BIPA . . . or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA . . . ." *Id.* ¶¶ 86, 96, 105.

## LEGAL STANDARD

When ruling on a motion to dismiss, "this Court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor." *Kerlin v. Chic. Bd. of Elections*, No. 16-cv-7424, 2017 WL 5295680, at *2 (N.D. Ill. Nov. 13, 2017). To satisfy his pleading burden, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell*

3

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "That is, the allegations must raise the possibility of relief above the 'speculative level.'" *Kerlin*, 2017 WL 5295680 at *2 (citation omitted). Crucially, a plaintiff cannot satisfy *Twombly* by "merely parrot[ing] statutory language of the claims that they are pleading . . . rather than providing some specific facts to ground those legal claims." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Dismissal pursuant to Rule 12(b)(6) is appropriate where the "facts" pled are entirely speculative and "cannot result in any plausible relief." *Segal v. Geisha NYC, LLC*, 517 F.3d 501, 504 (7th Cir. 2008).

## ARGUMENT

## I.    PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE BIPA'S HEALTH CARE EXEMPTION APPLIES.

BIPA expressly excludes from its scope (1) "information captured from a patient in a health care setting" **or** (2) "information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996." 740 ILCS 14/10. The second clause must be read to reach information other than that collected from a patient so as to avoid rendering it superfluous. *See Sylvester v. Indus. Comm'n*, 756 N.E.2d 822, 827 (Ill. 2001) (Courts must construe a statute "so that each word, clause, and sentence . . . is given a reasonable meaning" without rendering "any portion of the statute meaningless or void.").[2] Therefore, the so-called "HIPAA Clause" exempts certain non-patient biometrics used for "health care treatment, payment, or operations" under HIPAA, as well as to "treat an illness or other medical condition."

HIPAA defines "treatment" broadly, as any activity involving the "provision, coordination or management of health care and related services by one or more health care

---

[2]  Federal courts "apply Illinois's rules of statutory construction when interpreting an Illinois statute." *In re Hernandez*, 918 F.3d 563, 569 (7th Cir. 2019).

4

providers," and defines "health care operations" as including, among other things, "patient safety activities . . case management and care coordination," and "auditing functions, including fraud and abuse detection." 45 C.F.R. § 164.501. The definition of "patient safety" includes "the utilization of qualified staff" and "efforts to improve patient safety and the quality of health care delivery." 42 C.F.R. § 3.20. Accordingly, a health care employer may collect and use non-patient biometric information for the provision, coordination, or management of health services, as well as for patient safety, care coordination, and fraud and abuse detection, without adhering to BIPA's usual requirements.

Although his Complaint is exceptionally light on detailed factual allegations—yet another fatal deficiency, as discussed *infra* at Section II—the allegations Plaintiff did choose to include place BD's Pyxis machines squarely within the exception. He alleges that the "Pyxis MedStation system, and related Pyxis devices . . . are automated medication dispensing systems." Compl. ¶ 1. Users must "scan their biometric information, namely their fingerprint, when using the Pyxis devices to access medication." *Id.* ¶ 2. And BD "markets its Pyxis devices to employers as superior options to medication disbursement because it improves precision and accuracy of user access." *Id.* ¶ 42.

Much in the same way that HIPAA balances privacy rights with the delivery of quality health care services, the Illinois legislature enacted BIPA with the express intent that it not apply where—as here—biometric data is alleged to be collected, used, or stored in connection with the provision, coordination, and management of health care and related services, along with efforts to improve patient safety and detect fraud and abuse. *See* 740 ILCS 14/25 ("Nothing in this Act shall be construed to conflict with . . . [HIPAA]."); S.B. 2400, 95th Gen. Assemb., Reg. Sess. (Ill. 2008) (Amendment No. 4 at 3:12–16; adding exclusions discussed above). Accordingly,

Plaintiff's purported biometric data is exempted as "information collected, used, or stored for health care treatment, payment, or operations" under HIPAA. Because this exemption applies, Plaintiff's claim must be dismissed.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER BIPA.

Sections 15(a) through (e) set forth five different requirements for private entities. *See* 740 ILCS 14/15. Plaintiffs only purport to bring claims that BD violated Sections 15(a), (b), and (d), not Sections 15(c) or (e). Section 15(a) requires entities in possession of biometric information—possessors—to develop a written retention schedule for that information. 740 ILCS 14/15. Section 15(b) requires *collectors* of biometric information to provide notice and obtain consent in the form of a written release. *Id.* And Section 15(d) imposes consent requirements on possessors that disclose biometric information. *Id.* Plaintiff fails to adequately plead that BD has violated any of these sections.

### A. Plaintiff's Claim Under Section 15(b) Should Be Dismissed.

#### 1. BD Is Not Plaintiff's Employer, So It Does Not Have To (And Could Not) Comply With Section 15(b)'s Notice And Consent Provisions.

BIPA's text makes clear that, in the employment context, *employers* are responsible for procuring a subject's informed consent to collection of biometric data. Collectors of biometric data must make certain disclosures and "receive a written release executed by the subject." 740 ILCS 14/15(b). "'Written release' means . . . in the *context of employment*, a release executed by an employee as a condition of employment." *Id.* § 10 (emphasis added).

In the employment context that Plaintiff alleges here, a "written release" under BIPA can mean nothing else. It would be illogical to require BD, which had no relationship with Plaintiff, to procure a written release from him as a condition of employment. Plaintiff has never been BD's employee (*see* Compl. ¶ 49 (detailing Plaintiff's extensive employment history)), and BD

6

therefore could never procure from him—nor could he give BD—anything as a condition of employment.

Courts must "presume the legislature did not intend absurd, inconvenient, or unjust consequences." *In re Marriage of Goesel*, 102 N.E.3d 230, 235 (Ill. 2017); *see also People v. Hanna*, 800 N.E.2d 1201, 1208–09 (Ill. 2003) (rejecting statutory construction leading to "absurd result" that regulated entity would be unable to comply with the statute's requirements). "Compliance [with section 15(b)] should not be difficult." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 37. Accordingly, in the employment context, Section 15(b)'s release requirement applies only to employers. BD is not Plaintiff's employer, and Section 15(b) therefore does not apply to BD here.

> **2. Section 15(b)'s Notice And Consent Requirements Govern Only Entities That Actively "Collect" Or "Capture" An Individual's Biometric Data.**

Furthermore, Section 15(b) covers only those entities that actively "collect, capture, purchase, receive through trade, or otherwise obtain a person's . . . [biometrics]." *See* 740 ILCS 14/15(b). By contrast, entities merely "in possession" of an individual's biometrics owe no Section 15(b) duty to procure informed consent at the point of collection. The statute's text, purpose, and structure all compel this reading.

*First*, in drafting Section 15, the legislature included "possession" in four of its five subsections, the sole outlier being Section 15(b). Section 15(b) omits the term "in possession" and imposes notice and consent provisions only on entities that "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's [biometrics]." *Id.* "Where the legislature uses certain words in one instance and different words in another, it intended different results." *Dana Tank Container, Inc. v. Human Rights Comm'n*, 687 N.E.2d 102, 104 (Ill. App. Ct. 1997).

7

Section 15(b)'s four verbs—"collect, capture, purchase, [or] receive through trade"—

contemplate affirmative action to acquire an individual's biometrics. "Collect" and "capture"

refer to the initial collection of biometric data from an individual, such as when a company

enrolls its employees in a biometric timekeeping system. "Purchase" and "receive through

trade" refer to subsequent transactions whereby the biometric data changes hands. And because

"to express or include one thing implies the exclusion of the other," *In re D.W.*, 827 N.E.2d 466,

479 (Ill. 2005), this Court should not read "possession" into Section 15(b), which clearly

enumerates its triggers while omitting "possession." *See Rosenbach*, 2019 IL 123186, ¶ 24

(When interpreting BIPA, courts "may not depart from the law's terms by reading into it

exceptions, limitations, or conditions the legislature did not express, nor . . . add provisions not

found in the law."). Mere "possession," then, does not suffice to trigger Section 15(b).

The phrase "or otherwise obtain" does not alter this result. To "obtain" is "[t]o *bring into*

one's own possession; to procure, *esp. through effort*," *Black's Law Dictionary* (10th ed. 2014)

(emphasis added), or "to gain or attain usually by planned action or effort." *Merriam-Webster*

(2018). And "when a statutory clause specifically describes several classes of persons or things

and then includes 'other persons or things,' the word 'other' is interpreted to mean 'other such

like.'" *Pooh-Bah Enter., Inc. v. Cnty. of Cook*, 905 N.E.2d 781, 799 (Ill. 2009). Thus Section

15(b)'s fifth trigger, "or otherwise obtain," must be interpreted to align with the first four—

contemplating the *active acquisition* of biometric data. "[O]therwise obtain" does not, then,

broaden Section 15(b)'s scope to include "possession." Only those entities that actively "collect"

and "capture" a person's biometrics are subject to Section 15(b), and BD is not such an entity.

*Second*, construing Section 15(b) more broadly also would yield patently absurd results.

"[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative

8

interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). Extending Section 15(b) beyond active "collectors"—in direct contravention of its text—would give rise to an absurd compliance landscape.

To avoid being named in BIPA suits, BD, for example, would need to procure informed consent from any employee of a BD client whose biometric information was collected by the client and stored in that client's database. In the health care context, in which a single "client" may be an entire hospital system, this result would be particularly absurd. A statute should be interpreted within the context of the "real-world activity" that it is designed to regulate so as not to produce absurd results. *See Hanna*, 800 N.E.2d at 1209–11 (reversing where lower court failed to take into account real-world context, creating a "clearly untenable" construction).

Here, to sustain Plaintiff's argument would be to require a medical device supplier like BD to obtain a written release from every employee of each of its clients—in this case, every employee of multiple hospitals within a large hospital system—every time it sells a device that employs finger scan technology to safeguard medications. BD would be required to procure consent from every hospital employee with authorized access to stored materials, and somehow ensure that every subsequent employee granted access would also give her consent. This would give rise to an expansive web of potential liability and compliance costs, threatening BIPA's ultimate aim: realizing the "promise" of biometric technologies. *See* 740 ILCS 14/5. To avoid this absurd result, the Court should construe Section 15(b) narrowly, giving effect to BIPA's terms as they are logically used and understood.

### 3. Plaintiff Does Not Sufficiently Allege That BD Actively "Collected" Or "Captured" His Biometric Data.

Plaintiff fails to establish that BD owed him any duty under Section 15(b). He does not allege a single fact relevant to BD to support the conclusory claim that "Defendant" collected his biometric data without first obtaining a written release. Compl. ¶ 54. To the contrary, the only specific factual allegation is that his employers, not BD, collected his data. *See, e.g.*, *id.* ¶ 50 ("As a condition of employment, Plaintiff was required to scan his fingerprint . . . ."). Plaintiff cannot satisfy his pleading burden by "merely parrot[ing] statutory language" without providing "specific facts." *Brooks*, 578 F.3d at 581. As discussed above, BD had no relationship with Plaintiff. BD did not collect Plaintiff's data, and he sets forth no factual allegation to support an inference that BD did so. Accordingly, BD owed no Section 15(b) duties to Plaintiff, and his claim should be dismissed.

### B. Plaintiff's Claims Under Sections 15(a) And 15(d) Should Be Dismissed.

Not only does Plaintiff fail to allege that BD was a collector, but he fails to allege, except in the most cursory manner, that BD has ever even taken possession of his purported biometric data, as contemplated by Sections 15(a) and (c) through (e). Plaintiff's BIPA claims under Sections 15(a) and (d) should accordingly be dismissed.

### 1. BIPA Applies Only To Those Who Exercise Exclusive Dominion And Control Over Data.

"Possession," in the legal context, is well-defined:

> . . . a man is said to possess or to be *in possession* of anything of which he has the apparent control, or from the use of which he has the apparent power of *excluding others* . . . [A]ny of the usual outward marks of ownership may suffice, *in the absence of manifest power in someone else* . . . .

*Black's Law Dictionary* (10th ed. 2014) (citation omitted) (emphasis added). Under Illinois law, one does not possess an item "unless he has the ability, at a given time, to exercise dominion and

control over [it]." *Honeywell Intern., Inc. v. Dept. of Revenue of State of Ill.*, 851 N.E.2d 79, 85 (Ill. App. Ct. 2006); *Lindsey v. Macias*, 907 F.3d 517, 521 (7th Cir. 2018) (same). Crucially, possession contemplates the *exclusion of others*. *See Black's Law Dictionary* (10th ed. 2014) ("the right under which one may exercise control over something to the exclusion of all others"; "the exclusive use of a material object"; "the detention or use of a physical thing with the intent to hold it as one's own"). Thus, to state a claim under Sections 15(a) or (d), Plaintiff must plead that BD exercised dominion and control over his purported biometrics, to the exclusion of others. As discussed next, he falls far short.

### 2. Plaintiff Fails To Sufficiently Allege That BD Has Possession Of His Data.

The Complaint makes only the most cursory allegation that BD exercised *any* dominion or control over Plaintiff's biometric data—much less to the exclusion of all others. Aside from the bare incantation of BIPA's statutory language, Plaintiff makes only one relevant allegation: "Defendant subsequently stored Plaintiff's fingerprint in their [*sic*] systems." Compl. ¶ 51. This is followed by an identical allegation by "[t]he Hospitals," a term that is never defined. *Id.* ¶ 52. These allegations are insufficient to plausibly allege that BD exercised dominion or control. Plaintiff does not allege how, or even when, these "fingerprints" purportedly are stored in BD's "systems." Indeed, he does not ever allege how medstations owned and operated by his employers come to provide this data to BD.

### 3. Plaintiff Alleges No Facts To Support A Section 15(d) "Disclosure" Claim.

Additionally, to state a claim against BD under Section 15(d), Plaintiff must allege an unauthorized disclosure. He falls well short. Without any factual support as to BD, Plaintiff solely alleges that "Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's biometric identifiers and/or biometric information without

11

first obtaining the consent required by 740 ILCS 14/15(d)(1)." Compl. ¶ 104. This speculative, conclusory allegation cannot support a disclosure claim under Section 15(d). *See Brooks*, 578 F.3d at 581 (noting that "plaintiffs who merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims . . . must do more.").

The Complaint is devoid of the sort of "specific facts" necessary to allege disclosure, so Plaintiff's claim under Section 15(d) must be dismissed.

### III. PLAINTIFF DOES NOT PLEAD NEGLIGENCE, RECKLESSNESS, OR INTENT, AND THEREFORE FAILS TO STATE A CLAIM.

Even setting aside the foregoing, Plaintiff's claim would still fail because BIPA "only subjects violators to statutory damages if there is negligence or willfulness." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017). Specifically, BIPA's statutory damages provision provides:

> A prevailing party may recover for each violation . . . against a private entity that *negligently* violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater; against a private entity that *intentionally* or *recklessly* violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater.

740 ILCS 14/20(1)–(2) (emphasis added). Under BIPA's terms, then, not every violation is actionable. A statute's words "cannot be read in a fashion that would render other words or phrases meaningless, redundant, or superfluous." *People v. Trainor*, 752 N.E.2d 1055, 1063 (Ill. 2011). Concluding that merely alleging a BIPA violation sufficed would render the "negligently," "intentionally," and "recklessly" terms superfluous. Put differently, there exists a

12

space between a violation and an *actionable* violation. Plaintiff must plead something more: culpability.

The Complaint lacks any allegation that might support an inference of culpability. Rather, Plaintiff claims that BD "fails to comply with . . . BIPA mandates" (Compl. ¶¶ 80, 89, 99), and summarily seeks "statutory damages of $5,000 for each intentional and/or reckless violation of BIPA . . . or, in the alternative, statutory damages of $1,000 for each negligent violation" (*id.* ¶¶ 86, 96, 105). At no point does Plaintiff suggest which violation (if any) is which, apparently content to let the Court sort that out. Plaintiff does not set forth a single allegation regarding BD's culpability. Accordingly, he falls well short of his pleading burden, and his claims must be dismissed.

## **CONCLUSION**

For the reasons set forth above, the Court should dismiss Plaintiff's Class Action Complaint with prejudice.

Dated: July 31, 2019        Respectfully submitted,

BECTON, DICKINSON AND COMPANY

By: */s/ Matthew C. Wolfe*
       One of Its Attorneys

Gary M. Miller
Matthew C. Wolfe
Benjamin E. Sedrish
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
Tel: (312) 704-7700
Fax: (312) 558-1195
Firm No. 58950
gmiller@shb.com
mwolfe@shb.com
bsedrish@shb.com

4823-6152-9500

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew C. Wolfe, an attorney, hereby certify that on **July 31, 2019** I caused a true and correct copy of the foregoing **BECTON, DICKINSON AND COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** to be filed electronically.  Notice of this filing will be sent through the Court's CM/ECF system to the following counsel:

> Ryan F. Stephan
> James B. Zouras
> Catherine T. Mitchell
> Haley R. Jenkins
> STEPHAN ZOURAS, LLP
> 100 North Riverside Plaza, Suite 2150
> Chicago, IL  60601
> (312) 233-1550
> (312) 233-1560 (Fax)
> jzouras@stephanzouras.com
> rstephan@stephanzouras.com
> cmitchell@stephanzouras.com
> hjenkins@stephanzouras.com
>
> ***Attorneys for Plaintiff Corey Heard***

                    */s/ Matthew C. Wolfe*