IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COREY HEARD, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | Case No. 1:19-cv-4158 |
| v. ) ) | Honorable Rebecca R. Pallmeyer |
| BECTON, DICKINSON & COMPANY, ) ) | Magistrate Judge Hon. Gabriel A. Fuentes |
| Defendant. ) | |

**PLAINTIFF'S MOTION TO COMPEL**

Plaintiff Corey Heard ("Plaintiff"), by and through his undersigned counsel, respectfully moves this Honorable Court for an Order compelling Defendant Becton, Dickinson & Company ("BD" or "Defendant") to produce: (1) User information including tables, columns and fields of data collected by BD, including but not limited to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; (2) the data it collected for Named Plaintiff Corey Heard on its Medication Knowledge Portal ("MKP"), including whether he enrolled in Defendant's Bio ID; and, (3) Steven Large, Satish Malla and Eric Goad for their depositions.

**I.      INTRODUCTION**

Knowing there is a firm discovery deadline, Plaintiff brings this motion based on recently discovered information. On August 25, 2023, Plaintiff learned that Defendant has withheld highly relevant, discoverable information when he deposed BD engineer Creighton Kagey. At that deposition, Plaintiff learned, for the first time, that BD appeared to be collecting biometric information, not only from its CIISafes, but also from its other MedStation devices, including the MedStation 3500, MedStation 4000 and MedStation ES. Specifically, Kagey confirmed that BD

was collecting columns, tables and fields of data designated as ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ While this data plainly appears to be biometric information, Kagey could not explain what was contained in these columns, tables and fields. Kagey further testified that the only search he performed for biometric information collected by the MedStation devices was a 2 to 4-hour manual search he conducted on some, but not all of Defendant's databases.[1] Since that time, Plaintiffs' counsel has worked diligently, pursuant to Rule 37, to obtain this information, without success.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed his Amended Class Action Complaint on March 31, 2020, alleging that BD, and not just BD's hospital customers, violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ICS 14/1 *et seq.* by unlawfully collecting, obtaining, storing, using and disclosing his and other users' biometric identifiers (*i.e.*, scans of fingerprints) and biometric information through the use of its Pyxis biometric devices (Dkt. 37). On March 25, 2021, Defendant moved to stay proceedings pending several appeals (Dkt. 60). Defendant's motion remained pending until March 23, 2022, at which point it was denied (Dkt. 69). Thereafter, the parties engaged in written discovery for approximately 15 months, currently set to end on September 15, 2023.

Discovery in this case has been thwarted by the misleading representations and withholdings of Defendant. At the onset of this case, Defendant vehemently claimed that all biometric information collected by its Pyxis System and related devices was only collected and stored locally by Defendant's customers. Defendant flat-out denied that its biometric devices collected or transmitted biometric information to BD, representing in court on November 16, 2022,

---

[1] BD only conducted a cursory search of Import Database, Repository Database and ES repository database and performed <u>no search</u> of its File Shares for responsive information. This is especially concerning considering that BD just purged biometric information (collected by its CII Safes) from these databases in December 2022 and June 2023.

that "[a]ll of the devices and databases that house the template data that we're talking about is all on the customer premises. So, it's not housed within BD's system…[s]o in no event do we routinely or systematically collect the template data. It's not stored in the knowledge portal." (Dkt. 103). Similarly, in its May 5, 2022 interrogatory answers, Defendant stated that its devices "do not transmit, disclose, or otherwise disseminate information to BD." Ex. A (Defendant's Answers to Plaintiff's First Set of Interrogatories, No. 5). These representations, however, were false.

Faced with incriminating deposition testimony and other evidence, Defendant on September 16, 2022 amended its discovery responses to reflect that its devices *did* collect biometric information through at least break/fix activities and physical reclamation of the devices. Ex. B (Defendant's First Supplemental Answers to Plaintiff's First Set of Interrogatories). Thereafter, on April 20, 2023, Defendant once again amended its responses and admitted that *BD's CIISafe devices did transmit biometric information to all user and device data to the Medication Knowledge Portal,* a reporting and analytics system owned by BD with a physical server that resides in Las Vegas, Nevada.[2] Ex. C (Defendant's Second Supplemental Answers to Plaintiff's First Set of Interrogatories).

Since then, Plaintiff has engaged in extensive efforts to determine the extent to which BD devices collect biometric information from its users and transmit that information to BD's own MKP servers. In so doing, Plaintiff has learned BD collects Users' information from its customers' sites via BD software known as a ▮▮▮▮▮▮. Ex. D (Deposition of Creighton Kagey), 24-25. The

---

[2] What makes these original responses and amendments notable is that Defendant knew all along that its Pyxis System was collecting biometric information but chose not to disclose it. Making matters, worse, it appears Defendant's counsel, Matt Wolfe, also knew that BD was collecting biometric information. That is because in the *Mosby v. Ingalls Memorial Hospital and Becton, Dickinson and Company* case, filed April 18, 2018, Mr. Wolfe initiated a 2018 investigation that ultimately confirmed BD was collecting biometric information. This led to subsequent 2019 changes at BD in an effort to stop collecting such biometric information.

3

██████████████████████████████████████████████████████

████. *Id.* at 24. BD's ████████████████████████████████

████████████████████████████ and actually list tables, columns and fields of data collected by BD. *Id.* at 55-56. Recently produced configuration files for BD's CII Safes and MedStation devices contain entries for ████████████████████████████ *Id.* 179-212. Notwithstanding the nature of this information, and despite repeated and ongoing requests by Plaintiff, **BD has not produced any document that would define or explain what these internal terms mean, or what information is actually collected**. *See* Ex. E, September 8, 2023 Correspondence. Similarly, BD's own witness and engineer, Creighton Kagey, was not able to identify or explain the information collected by BD in such tables, columns and fields.[3]

Additionally, at that same deposition, Plaintiff learned that BD has maintained and stored the biometric information collected from its CIISafes until just a few months ago, when it deleted that information from several sources, including its Share Files, in response to this litigation. Ex. D, Deposition of Creighton Kagey, 110-113; 164-167. Notably, the biometric information collected by BD's CIISafes and just recently deleted, appears to be the same columns, tables and fields of data collected by BD's MedStation devices. In short, BD has been collecting biometric information from its CIISafe devices, concealed that fact until late in discovery, surreptitiously deleted that information in December 2022 and June 2023, and now claims that its MedStation

---

[3] Met with requests about the meanings of these terms, Defendant's counsel indicated that Creighton Kagey would be able to provide explanations at his deposition. However, Kagey did not know the meanings of these terms. Ex. D at 186:1-12 ("Q. About 15 percent down the row from the top, there's a ████████; do you see that? A. Yeah. Q. Do you know what that's referring to? A. I have no idea. Q. If we go down four more ████████████. Do you know what that comment is for? A. I don't know. Q. Okay. If you wanted to find out, would you go to Steven Large or someone in his group? A. Yeah…"); 187:22-188:3 ("Q. If we go down about seven or so more, there's one for ████████ do you see that? A. I do. Q. Do you know what that's referring to? A. I don't."); 212:13-15 ("Q: Where it says ████ do you know what it's referencing there? A: I don't…")

4

devices, which use the same data agent as BD's CIISafe devices and which contain identical terms in their configuration files, do not contain biometric information. For these reasons, Plaintiff seeks an Order compelling Defendant to: (1) search for and produce biometric information, including the apparent biometric data designated ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ set forth in the MedStation configuration files, (2) produce the data of named Plaintiff Corey Heard, and (3) to produce witnesses Steven Large, Satish Malla and Eric Goad for their depositions.

### III. LEGAL STANDARD

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Rule specifies that in seeking discovery, the parties must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979). Further, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994). "A district court is in the best position to decide the proper scope of discovery and to settle any discovery disputes." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996). "The district court exercises significant discretion in ruling on a motion to compel … grant[ing] or deny[ing] the motion in whole or in part." *Id*. at 496. A party may apply to the court where an action is pending for an order compelling a complete response to discovery. Fed. R. Civ. P. 37(a)(3)(B). The movant must

5

certify a good faith attempt to confer with the party failing to produce discovery. Fed. R. Civ. P. 26(c)(1) & 37(a)(1).

IV. **ARGUMENT**

    A. **Defendant Should Be Compelled to Produce Biometric Information It Collected Including Tables, Columns and Fields of Data Such as** 

BD has only provided a <u>list</u> with technical designations of the information it collects from its MedStation devices.[4] BD has refused to provide any documents or witness that can explain what actual data is collected by those files. While Creighton Kagey testified that BD's data agent pulls data based on the corresponding configuration files, he could not identify tables and columns that appear to be highly relevant, including but not limited to the following:

Ex. E at 187-209.

It appears that BD's ignorance of the own data it collects may be intentional. At his deposition, Kagey testified BD has <u>not</u> searched its zip files for information pulled by its MedStation devices and has made an incomplete search of its import database, consisting of a 2-4

---

[4] This list includes the following: 

hour manual spot check. This is concerning for several reasons. First, a manual search is prone to human error. Second, a comprehensive, automated search could easily be conducted by BD, but has not been. Finally, BD has already confirmed its CII Safes were collecting biometric information and in the past six months has purged this data from its databases, including its File Shares. What is even more remarkable is that the material being deleted from CIISafes ▮▮▮▮▮▮▮▮▮▮ (*See* Exhibit F, Bates. No. BDHEARD_00109315) is the same as the data included in the MedStation configuration files ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮[5] Accordingly, Plaintiff requests that this court compel BD to produce tables, columns and fields of data collected by BD, including but not limited to ▮▮▮▮▮▮▮▮▮▮ as set forth in Medstation configuration files ▮▮▮▮▮▮▮▮▮▮ and collected by BD in its Import Database, Pyxis Repository Database, File Share and any other relevant databases.

  **B. BD Should be Compelled to Produce the Data Collected from Plaintiff Corey Heard.**

Defendant has admitted it collects information from Corey Heard, including but not limited to his name, hospital location and whether he enrolled in BD's biometric ID. Ex. D at 89-90. Nonetheless, and despite Plaintiff's requests, Defendant has refused to produce the data kept for Mr. Heard in its MKP database and has not agreed to produce any information collected by Mr. Heard from the MedStation ES System, claiming it is an "impossibility" for the MedStation ES to

---

[5] BD has conceded that its CIISafe devices collect biometric information from their configuration files, which also include reference to ▮▮▮▮▮▮▮▮▮▮ **BD recently, in June 2023, deleted user biometric information that had been pulled from CIISafe configuration files and resided in the zip files.**

transmit biometric templates to the MKP. Ex. E, Correspondence; and Ex. J, September 9, 2023 Correspondence. Accordingly, Plaintiff respectfully requests that this Court compel BD to produce all of the data collected by BD for Corey Heard in its native format. This would include all data maintained by BD on its Knowledge Portal, Import Database, File Share or elsewhere, including but not limited to ▮▮▮▮▮▮▮ related data as well as the data referenced in the nineteen terms referenced *supra* fn. 4.

### C. Defendant Should Be Compelled to Produce Additional Deponents Steven Large, Satish Malla, and Eric Goad.

As set forth above, Plaintiff only just learned about BD's recent deletion of biometric information as well as the Medstation biometric configuration files at the deposition of Creighton Kagey. Although Kagey could not explain what was being collected by BD'S configuration files, he identified other witnesses who would have highly relevant information regarding the data collection practices of Defendant. For example, Kagey identified Steven Large as someone who would have knowledge of the meaning of terms within the MedStation configuration files, as well as the functioning of BD's MedStation devices. *See* Ex. D, Deposition of Creighton Kagey, 186:6-12 ("Q. If we go down four more ▮▮▮▮▮▮▮. Do you know what that comment is for? A. I don't know. Q. Okay. If you wanted to find out, would you go to Steven Large or someone in his group? A. Yeah…"); 204:2-9 ("Q: Is there a reason why you haven't looked [to see if there were ▮▮▮▮ from the MedStations on the ▮▮▮▮ A: Most likely because of the fact that it ▮▮▮▮▮▮▮, but I want to add that I'm not the expert on the [MedStation] 4000. Q: Okay. Would that be Steven Large? A: Steve Large would be able to find someone who knows the 4000 system and can describe what these fields mean").

Kagey also identified Satish Malla as someone who would have information related to the deletion of biometric information from BD's import database and file share, and the purported

8

search for biometric data collected from the MedStation devices. Ex. D 124:12-14 ("Q: Who did you discuss [biometric data deletion] with? A: I discussed it with one of my managers who reports to me, Satish Malla"); 167:7-10 ("Q: And who did you have that conversation [about removal of data from file shares] with? A: It was a conversation likely between myself and Satish"); 188:4-23 ("Q. As part of your involvement in the investigation in 2018, the changes to the data agents, the recent purges in 2022 of biotemplates, and then 2023, did you ever look into the actual Knowledge Portal itself to see if the MedStation 3500s or 4000s were actually collecting any sort of biometric information? A. Well, I think I would probably have the same response where we don't store biometric data anywhere where you have template data. We did take a look to see if we were collecting anything from -- or had anything within our databases from the ES system or 3500 or 4000, and the only place it was identified was in CII Safe. Q. Okay. And when you say you took a look, who took a look? A. Multiple people. Q. Okay. Could you tell me who? A. Myself and both Satish Malla…") [6]

Finally, Kagey identified Eric Goad as someone with information regarding the BD search of file shares to identify biometric information collected by the MedStation 3500 and 4000 and deletion of biometric templates from the MKP. Ex. D 204:2-23 (Q. Is there a reason why you haven't looked [in the MedStation file shares for biometric information]? A. Most likely because of the fact that it ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; but I want to probably add that I'm not the expert on the 4000…Q. Okay. Is there -- have you even though you're not the expert, is there anything stopping you from looking into those ▇▇▇▇▇ to see if those biotemplate IDs were stored for the 35000s, the 4000s? A. I personally don't have access to those files. Q. Is there anyone

---

[6] On September 8, 2023, Defendant produced emails to and from Satish Malla related to the deletion of CIISafe biometric information that appears to be very similar, if not the same type of data collected by the MedStations. Because of this late disclosure, Plaintiff has been unable to question any BD witnesses about them.

9

that you know who does? A. There are folks on our [REDACTED] that would have access to it. Q. Can you think of anyone by name? A. The director who I can -- Eric Goad can provide it…"); 115:23-116:10 ("Q: Is there a way to go back and find out how many Users' biometric templates were deleted by you off of the -- or by BD off of its Knowledge Portal? … A: I would have to talk to the operations team…I would talk to Eric Goad").

And, to the extent that BD has produced relevant information, it has been produced belatedly, after persistent requests from Plaintiff, leaving Plaintiff no opportunity to meaningfully examine the information. For example, Plaintiff has since May asked for documentation explaining the functioning of the configuration files produced by Defendant on April 20, 2023. Ex. I, May 4, 2023 Correspondence. Defendant has denied the existence of these documents. Ex. E, Correspondence. However, in Creighton Kagey's August 25, 2023 deposition, BD revealed that there is a list of configuration files that explains the field extraction from the configuration files. Defendant produced this purported document several days ago, on September 8, 2023. However, Defendant did not provide any context or explanation for this document, which contains 36 spreadsheets which each use unexplained internal terminology, including [REDACTED] [REDACTED] and others. Notably, these are many of the same tables and fields contained in the CIISafe and MedStation configuration files, which are pulled by the same data agent. Without context provided by the creator and users of this document, who have not been deposed to explain it, the production is incomplete. Plaintiff has consistently asked BD for this type of document and accompanying explanations, and Defendant has only very recently produced the standalone document, without explanation or opportunity for Plaintiff to use it to examine any of BD's witnesses. This is just one example, and BD's refusal to produce relevant

documents, and its much-belated production of certain other documents, has impeded Plaintiff's right to obtain and examine relevant, discoverable information central to this case.

Defendant has withheld relevant documents and information, including the information of BD employees who have relevant information about Defendant's biometric data collection and deletion, until the eleventh hour. For this reason, BD should be compelled to provide the depositions of Steven Large, Satish Malla, and Eric Goad, who will likely be able to answer questions related to the use of BD's configuration files, data agent, and biometric data collection.

## V. CONCLUSION

For all the above reasons, Plaintiff respectfully requests that the Court grant his Motion to Compel BD to search its MedStation databases for biometric information and to produce the data related to biometric information, to provide the data collected from Corey Heard, and to produce witnesses Steven Large, Satish Malla, and Eric Goad for deposition.

## RULE 37(a)(1) CERTIFICATION

Undersigned counsel, after several telephone calls, numerous e-mails, and good faith attempts to resolve these discovery issues with defense counsel, have been unable to reach an accord on the foregoing dispute. *See, e.g.,* Ex. J (September 7, 2023 Correspondence); Ex. K. (September 11, 2023 Correspondence).

Dated: September 22, 2023        Respectfully Submitted,

                                     */s/ Ryan F. Stephan*

                                     Ryan F. Stephan
                                     James B. Zouras
                                     Catherine Mitchell
                                     Lauren A. Warwick
                                     **STEPHAN ZOURAS, LLP**
                                     222 W. Adams Street

        Suite 2020
Chicago, Illinois 60606
(312) 233-1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
lwarwick@stephanzouras.com

***Attorneys for Plaintiff and the Putative Class Members***

**CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on September 22, 2023, I filed the attached with the Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.

                                                       */s/ Ryan F. Stephan*